at A. Arguing on behalf of the appellant, Mr. Marios, and your members. Arguing on behalf of Mr. Lee, Mr. Gregory A. Cooper. All right, counsel, you may begin when ready. Please feel free to begin. And feel free to adjust the microphone when you approach. Same goes for appellee. Please fix the microphone so that we can hear you. And you may begin. Thank you. May it please the court and counsel, this case turns basically on 16 words contained within a parentheses in the covenant and the reading of those words as they relate to the dispute in this case. Unlike a lot of lawsuits, the facts in this case are really pretty much not in dispute. The development agreement that started the Elgin Auto Mall was entered into in December of 2007. Some amendments to that agreement occurred, and the salient amendment here is the one that occurred. It's the third amendment to the development agreement, which occurred in November of 2009. Mr. Kurianos, in light of the fact that it, in your opinion, it boils down to this agreement, are we reviewing this de novo? Yes. The dismissal here was, I believe, of the 2615 motion. The court at the trial level didn't really delineate whether it was a 615 or 619 motion. But as you read the opinion and the court's determination, it's pretty clear that it was a 615 motion. So, therefore, I do believe this court is reviewing this de novo, which means that you're reviewing it anew as though nothing happened in the trial court. Thank you, sir. The third amendment, and I'm sure the court has read the readings and is well aware of what the issues are here. The development agreement basically set up a process whereby the auto mall would be set up, and initially only what was called enumerated brands were allowed. An enumerated brand was a certain type of auto dealership. It listed the types of dealerships. And pretty much at the onset, the only types of dealerships that were allowed were enumerated dealerships. There were some sort of exceptions to that. There was the multi-lot and the other. What was the rationale behind that? What was the rationale or the intent by limiting what dealerships went in there? I'm speculating at some level, but my understanding is the city effectively wanted to see new dealerships that weren't already in the city, so to change the tax base. The city of Elgin, if you're familiar with it, on the east side has a number of dealerships. And I think what they were trying to do is create a scenario on the west side, there would be another auto dealership area. And by, you know, they didn't want dealerships on the east side effectively to move to the west side. I also think they were shooting for, for lack of a nicer way to put it, more high-end type dealerships as well. And, you know, for whatever that's worth, that's what they agreed upon. Relevant to my client is the fact that in order to obtain what's called the development assistant monies, they needed to sell a certain number of enumerated dealerships. And the way them all are set up, it's on Randall Road. I'm sure some of the justices here have driven by it. There's lots on the outside. Lot 1, which is the lot in question here, is one of the lots directly on Randall Road. And then there's lots sort of on the inside. And, you know, from a business perspective, I think it's kind of patently obvious that a dealer would want to be on the main road as opposed to in the back lot. The Third Amendment changed that. And with the Third Amendment said, and I'll read the direct language that's relevant in this case, and it's in paragraph 2, and it replaced paragraph 6B of the development agreement. It said, the developer may sell any lot to or for the use of a dealership, whether or not such dealership sells enumerated brands. It being agreed and understood, however, that only dealerships selling enumerated brands, whether a sole or a part of an alpha package dealership, shall be counted in determining when and if the developer has earned the right to receive development assistance. Now, what KIA or the appellees in this case argue is that that basically undid the language in the covenant, which I'll touch on next. They argue that you're not entitled to rely upon the covenants. What are the three criteria that you must establish in order for the covenant to apply to your client? Well, I think covenants, generally speaking, are generally run with the land. Right. They run with the land. They carry strong presumption of validity, absent proof they're wholly arbitrary, violate public policy, or abrogate a constitutional right. Their argument seems to be that you have not met the criteria for a covenant to run with the land, which is, generally speaking, the grantor or grantee intended the covenant to run with the land. That's here, correct? Yes. Number two is the covenant must touch and concern the land, and that's clearly not here, correct? I believe so. And the third is that there must be privity of the estate between the party claiming the benefit, which is your client, of the covenant, and the party resting under the burden of the covenant, which would be the defendants. Correct? Correct. So they're all here. We believe they are, and we believe that it's clear that the covenant is certainly not arbitrary. It doesn't violate public policy, and it certainly doesn't abrogate any constitutional rights. So, therefore, it's a properly recorded covenant. We're the successor developer, and we are entitled to the benefits of the covenant. And incidentally, you know, one of the things I think that's sort of been insinuated a little bit here, and I don't think this is a false scenario, but I do think it shouldn't be lost on the court that Kia, when they bought the property, knew or should have known that this covenant existed, knew or should have known that they were a non-enumerated brand and apparently chose not to seek the permission that the covenant requires. The Third Amendment, I think, if you look at it as plain terms, talks about the fact that you can now do non-enumerated brands, but also explicitly talks about the fact that the fact that we, the city, are now allowing you to do that does not give you the right or does not count these new dealerships that are non-enumerated brands as against the development assistance, you know, monies that you would get. So by definition and based on the explicit language in the Third Amendment, the component of the development agreement relative to obtaining the development assistance still is explicitly tied to enumerated brands. So you're saying it doesn't affect the approval needed, right? The amendment, Third Amendment doesn't affect, it affects whether a brand can be outside the enumerated brands. Right. In which case there's no money behind it, basically. No tax benefits. No tax benefits, no money behind it. So I think what they're saying is that that impacts the approval that's listed in the covenant. Well, that's certainly what they're arguing. I don't think that they are correct. And the reason for that is if you look at the covenant now, that's what we're really here in arguing about. Again, the court should interpret the terms of the covenant as a whole, giving each term its meaning. Yes, so the first clause of the paragraph is, for so long as required by the plan development control documents. What is that referencing? I believe that's a development agreement and it's amendments. All right, so that's a reference to, in effect, to A of the Third Amendment. Right. And it is our position that at the time of this sale and purchase, the plan control documents, there's two components to the non-enumerated brand delineation in the plan control documents. A can even have a non-enumerated brand, which I can see the Third Amendment changed. I mean, at the point that that amendment was written, you now could have a non-enumerated brand. But secondly, and also as required by the plan control documents, our ability to get paid the tax benefits is also controlled by that. And that still is in the plan control documents to this day. It was 20 years, right? It's for 20 years. Right. The tax benefit would be there if you got one of the. Exactly. Right, and we're in year 18 now, and part of the reason that this lawsuit was filed is that basically the primo lot, your lot number one, the best lot, is now no longer available for sale to an enumerated brand. It directly affects our ability to achieve that benefit, which is a fairly significant benefit. What about the argument, I know you're only so much time, the argument about you can't prove damages? Well, I think, you know, is that an argument that should be decided at a motion to dismiss? I think not. We haven't even done discovery in this case. Our position is we can prove that they failed to obtain our approval as necessary. We've now lost a lot, and by, you know, definition, we now have one less lot that we can sell to achieve our enumerated brand. Whether a court in a prior fact believes based on all the facts and expert testimony as to the likelihood of selling other lots and so forth that that warrants damages for us is a trial issue, not a motion to dismiss issue in all due respect. Was that a forfeiture issue raised? I'm not sure. Forfeiture on our part? Yeah. I don't think they raised it under a motion to dismiss. I don't, you know, essentially I think if a fax in this case ever proceeded forward, I think that they would show that there were attempts to discuss this issue before the sale occurred. But, again, that's not before the court, so I'm not going to get into the facts that were not before the court. So if you look at the covenant in line with Justice Kennedy's question, the planned control documents still have the requirement that enumerated brands are the only basis to obtain your tax development assistant monies. So now let's look at how the writer of this document wrote the document. It says, unless otherwise approved by the declarant, and I'm going to call that our sort of veto power, and then come the parentheses, during such time as enumerated brands requirements may be in place under the development agreement by the city. Now, it's our position, and I think it's what the appellee in this case is arguing, is that parentheses language is the key here. It's interesting how this is written. If you were writing it in ordinary sentence construction, and this veto power was going to be dependent on what happened to the enumerated brand requirement as to both the declarant, the developer, and the city, you would put that language first, and during such time as the enumerated brand requirement may be in place under the development agreement, wouldn't put in parentheses either, it must be approved by the declarant and or the city. By instead separating out declarant and city, it's my position that if you give that its clear meaning, it gives the declarant different rights than the city, and it actually makes sense, because the city isn't the one looking to get the money from an enumerated brand here. The declarant is. Our decision to veto Kia, had we been given that right, would absolutely have affected us. It doesn't affect the city, because they get their tax base, and they get their tax money, and so forth, and so there is a legitimate reason for the delineation there. Well, the whole purpose of the enumerated brand requirement was to attract the high-end dealers, which is going to be a greater tax benefit. Right, and so it's all tied up with that concept, right? It is, and so I probably misspoke some. The city probably would prefer a Mercedes dealership to a Honda dealership, I guess, but the city is still getting some tax benefit from the existence of the dealership there, as opposed to the empty lot that was there before it. My client is getting zero benefit, because it's not an enumerated brand, and so they are not getting, again, actually on the facts of this case, they literally got zero benefit, because this lot had been sold to the McGrath group, ostensibly because they were going to build something, and then McGrath turned around and sold it to this group for actually a fairly good price. So my client got absolutely no benefit from what occurred here, and that's what spawned this lawsuit. Now, that parenthetical language, in my opinion, doesn't even apply at all here, because the development agreement still requires enumerated brands to get the development. So the concept that appellees argue that the covenants are altogether inapplicable here, I do not, based on tying all these documents together, believe is an accurate recitation of what's occurring here, because the planned control documents still require enumerated brands for a very important component of the discussion here, and that is my client getting paid. Again, I think, and I'm seeing that my time is coming fairly to a close, I think what I'm asking this court to do, and I'm happy to answer any further questions that either of the justices has, is give the language in the covenant, as well as the language in the Third Amendment, as plain meaning. And if you do that, one of the things that the appellees said, both at the trial court and at the appellate brief level, was that we are asking the court to do a tortured reading of this document. I frankly disagree. I think what we're asking the court to do is give this document its plain meaning and the words and the sequence in which they are inserted into the document its plain meaning. And if you do that, I think the appropriate thing to do here is to reverse the trial court. We have pled a case, and the case should proceed to trial. I have no further comments or any questions. No, thank you, counsel. You'll have time to move on. Thank you. Good morning, Your Honors. Who is the court? My name is Gregory Cooper. I'm here on behalf of the appellees. Counsel wants to have you focus in on what he described as the 16 words of the restrictive covenant, when the restrictive covenant is actually 85 words and five dependent clauses that all need to be read in accord with one another to give every word its intended effect. On this appeal, we're dealing with three discrete issues. The interpretation of the restrictive covenant along with the development documents. We're dealing with the question of whether or not they can obtain damages. There's also the issue of whether or not they're entitled to amend should they prevail. Critical to everything is the interpretation of those documents. Turning to Section 7F of the restrictive covenant, and Your Honor, Judge Birkett, you asked whether or not we were disputing whether or not the covenants pursued with land. We are not saying that the covenants do not have effect on this property. What we're saying is that the covenants do not have the effect that the appellant believes that they should have. Why not? Why not? What is missing in terms of the application of the covenants that don't apply to the plan? Well, certainly, Your Honor, if I may, the covenant starts out with the phrase for so long as required by the plan to control documents. Ariel, any rights within the covenant are restricted where they can be found in these other documents. The other documents include the development agreement, a zoning ordinance, and a signage ordinance. Okay? As counsel for the appellant noted, the third amendment to the development agreement did away with restrictions on the enumerated brands. Our read on this protective covenant is that in order for anything to apply out of it, you have to find a contractual right someplace else in those plan control documents. Now, I will loop back around to the interpretation of the parentheses that counsel has cited as important. But what is very important when you're looking at the development agreements, because the parties are in agreement that the signage ordinance and the zoning ordinance do not have any applicability here. First, Section 6B of the original development agreement includes the only restriction on enumerated brands. The right to obtain development assistance does not include any language about restrictions on brands or permission being required. The only reference to the enumerated brands in that original development agreement is Section 6B, which explicitly prohibits the sale of dealerships to non-enumerated brands. It explicitly prohibits the use of the property for non-enumerated brands for a period of three years. Wrapping it back to the interpretation of the restrictive covenant, the restrictive covenant doesn't say to the extent relevant to these development agreements. It's to the extent required. The only requirement in the development agreements comes out of Section 6B. Now, 2007, there was a big financial crisis going on. In 2009, Elgin and the original developer chose to amend the development agreement to explicitly do away with the restriction on the brand restrictions. The title of Section C is Elimination of Restriction on Enumerated Brands. Now, I realize that the heading does not define the terms, but it is certainly a good guidepost for the intent of the drafters there. What it did was it entirely eliminated Section 6B, and it replaced it with a new restriction on enumerated brands that limited the right to sell or that alleviated the limitation on the right to sell to non-enumerated brands. But more critically, it did away entirely with the restrictions on the use. Okay? Couldn't they have been more specific? Were they intending to do that? I'm sorry. I didn't hear you. Actually, could they not have been more specific if they had intended to do that? If they intended to do? Do away with the brand. Well, they were very specific. They specifically state elimination of restrictions as to enumerated brands. In the heading. In the heading, and then developer may sell the lot to or for the use of a dealership, as to whether or not the dealership sells enumerated brands. It does away with any right to restrict. Now, the second part of that does reference the fact that, yeah. You can still sell to an enumerated brand and get the tax benefit. You can. You can. With plain reading. Yeah, you can, but it doesn't restrict it. And the key to the reading of the restrictive covenant is that it only gives rights required by the development agreement. Not things that are relevant to it. Obviously, if the parties had intended for the right to restrict or to the requirement to gain permission to carry along with the right to seek development assistance, because the development assistance is actually the big, big chunk, not the taxes. They could have written into the agreement that the owner still maintains the right to or you need permission. There is nothing in that dealership or development agreement that requires permission. It just provides a benefit. But is there anything that overrides it? Because, you know, the restrictive covenants that are following the land say that the plaintiff here has a right to veto a non-enumerated brand. But it doesn't because it says for so long as required by the plaintiff control documents, it has a right to veto. But to say that the restrictive covenant sitting by itself provides a right to veto would require that you not read the first independent clause to that section, which says for so long as required. The for so long as required says you've got to tie it back to a contractual right. So it has to be a requirement under the original development as amended, right? You're saying it has to be required that enumerated brands still be an actual requirement for them to maintain the approval? Certainly, Your Honor, because with the restrictive covenant, first of all, restrictive covenants are disfavored, so they're only enforced where they're clear. Here, the initial sentence says for so long as required by the plaintiff control documents. And so that is as clear as can be that in order to find a right to restrict, you have to go back to these underlying documents. And our argument with the underlying documents is very simply there's a difference between a right to restrict and a potential benefit. And the clauses of those development agreements that provide the right to restrict clearly label them as the right to restrict. So that's section six of the original agreement. That was amended by the fourth amended agreement, right? So the enumerated was you're saying it was thrown out as a requirement, right? So it opened up. But the original agreement had section seven, which included the incentives, essentially, the money, the what was that? Unless otherwise approved by the government. The development incentives, right, section seven? Yeah. Was that amended in a relevant manner? Not to lower the dollar figures later. I believe that the development assistance that was available under the original development plan control documents was section three of that document. And it separated the development assistance into part A and part B. Significantly, neither has the ability to obtain development assistance does not have a sunset date. You can get development assistance once you achieve three lots selling enumerated brands, and then it escalates with a fourth, a fifth, and a sixth. Section three does not include any sort of restrictions or requirements of permission. The only place where enumerated brands has any role in the discussion in that development agreement is in section 6B. Section 6B was actually, it was modified by the third amendment to the development agreement in 2009, where, you know, in the face of harsh financial times, the city and the developer said, you know, well, like, we don't want to have these restrictions on who we're allowed to get in. We just want to get somebody in the door. You know, turning, if I may, to the parentheses, because a council has said, well, the only way that this makes sense is if you read this parentheses, during such time as the enumerated brand requirement may then be in place under the development agreement. By the city. Only, yeah, only applying to the city and not the developer because of the placement of that clause. There, A, if you read that parentheses to make the plan development agreement, or the development agreement only apply to the city and not to the dealer, it renders the first clause completely irrelevant because it's no longer as required by the development control documents. Secondly, there are two very plausible rationales for why they would include this parenthetical. First of all, as we discussed, these signage and the zoning ordinances, they're not at issue here. What is at issue is this development agreement. Section 6B of the development agreement, as initially drafted, and then Section 6B as subsequently, do not explicitly provide the city with any rights. It just prohibits the use. It does not say, hey, you can get permission. It calls attention to the fact that the city is relevant to that agreement and to the permissions that Section 6B could potentially have. The second, and also equally plausible explanation of it, is that if you need to get permission of both the developer and the city for the lifetime of the development control documents, and the development control documents incorporate the zonage and signage requirements, then you would have to get permission from the city until the end of time. It would never go away. It calls attention to the fact that really where it's relevant to get the city's permission is during the duration of that development agreement. And the development agreement, as we've discussed, eliminated the enumerated band restriction on its own terms after three years and by agreement of the parties after two years. If I may, I'm running low on time, so I'd like to just briefly address the damages issue. Here, the appellants own four lots. Their development assistance becomes available after they've sold three lots. What they're looking to do is they're looking to get a cash judgment against my client for one out of nine lots because it may potentially impair their ability to reach this development assistance at some point down the road. They're simply, I mean, even if they did have a right to restrict the brand, those damages haven't come to pass. Secondly, the development assistance is only a right to gain reimbursement for development expenses that they have expended or will expend. How does that have anything to do with the 2615, though? The damages. The damages? We're not arguing on a factual basis. What we're saying is that the damages haven't come to pass, and so it's almost like a standing issue as opposed to a calculation of damages. Can you divide those? Can you divide the two? Their request at the trial court and then separate the damages for later? I mean, I'm. They're not intertwined where they can't file with respect to one and then if damages arise. My point is why now at the stage of 2615 are we going to knock them out because they have approved damages? Well, because 2615, 2-615 is a pre-din standard, and so what our argument is is it's twofold. First of all, that the damages have not come to pass. These are not. It's not a cash bonus. What it is is. You can finish. What it is is a right to recoup money that they've already spent or money that they have said that they are going to spend to develop this plot of land. The complaint and the second amended complaint do not make any allegations about any money that needs to be recovered, any money that they have spent developing this property since they took ownership of it in 2017. After over 10 years in the prior developer's hands. So simply put, they haven't met their pleading burden, which is why it would be a 2615 issue and why the amendment issue would become relevant if this court decides to make a determination on the damages aspect of our motion. We believe that the motion or that the court correctly interpreted the restrictive covenant so that there was no right. I don't have anything else, Your Honors, if you have any questions. All right. Thank you very much, Counsel. Thank you very much. All right.  May it please the Court, Counsel, again. I'd just like to touch on three things that Counsel addressed in his argument in Justice Shastok's questions about the specificity of the Third Amendment. I disagree with Counsel. I think that the Third Amendment actually is specific and identifies the issues that we've discussed. In our brief, we quote it directly. And what it says is, again, the developer may sell any lot to for the use of a dealership, whether or not such dealership sells enumerated brands. However, that only dealerships selling enumerated brands shall be counted in determining whether the dealership has earned the right to receive development assistance. And I didn't read it precisely. I read the important part. Counsel, their argument is that it was a requirement to sell only enumerated and original. And now it's no longer as required because it says may. And so what their reading of 7F is, of the declaration, is it has to be required. And the amendment says it's no longer required. What also has to be required to get your money is an enumerated brand. The Third Amendment, by including that second portion of the language, very specifically says you still need enumerated brands to get your money. You don't need an enumerated brand. Go ahead. I'm sorry. You don't. Now you can sell to a non-enumerated brand, perhaps because, as counsel noted, at that point in time the economy was such that we just wanted to fill lots. That was my question. Did the economy change the intent of this? It may well have. And it may well be that empty lots are not as nice as lots with something on them. But what the Third Amendment also specifically did was said to the developer, if you sell to non-enumerated brands, you're not going to get paid. So it is specific in the delineation that I think exists in this scenario. Secondly, with regard to the language of the covenant itself, counsel places a lot of emphasis on the beginning, for so long as required. But what's interesting is the parentheses terms basically say the exact same thing, for so long as required by the plan control documents, and then later during such times the enumerated brand requirement is still in place. It's the same thing. Why would you say it twice unless it had some meaning? And the reason it has meaning is because, again, there are two separate and distinct requirements in the plan control documents that are at issue here. One, can you sell to non-enumerated brands? And in 2007, when we were all ambitious apparently, we thought we wouldn't need them. And then economic circumstances changed that and changed that delineation. But secondly, the city still isn't going to pay you unless you do sell to enumerated brands. And the reason that that second parentheses is inserted, which says the same thing as the first part of the paragraph, can't be without any reason whatsoever. The reason that that's inserted, if you give it its plain meaning, is that that applies to the city. And it's the developer. Right. It's applying to the city's veto rights as to enumerated brands or non-enumerated brands. The city still absolutely maintains and controls and keeps its rights to not pay my client. So if the defendants had come to you for approval and your client says no, does that stop the development then, the way you're viewing this? I assume, well, probably what would happen then is that we'd be the defendant, they'd be the plaintiff, and they'd be suing us, saying that you're arbitrarily and capriciously. But under your reading of these documents, that's what the veto right is, that you're. . . Interestingly, given the price that they were buying this from. . . I mean, they actually bought this property for far less than we sold it to McGrath for. We may have chosen to buy it back and try to sell it to somebody else for more money and made a profit that way. But they didn't give us that chance. And, again, it shouldn't be lost on this Court that this document, it's a public record. When they bought it, I'm sure they had excellent real estate attorneys that made them aware of it. So they chose not to seek the approval. And that's what this lawsuit's about. Your time is running low. I wanted to give you a chance to address the damages. Again, whether the damages are the amount that the Development Assistance Program would give us or $1 is for a trial court to determine at some point in time that at a 2-6-15 motion when no evidence has been placed before the court, I think it's an appropriate time to make that determination. I don't have anything else. All right. Thank you very much, counsel. We will take this case under advisement and issue a disposition in due course.